

FILED BY ___ D.C.

NOV 05 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-20739-CR-MARTINEZ

MAGISTRATE JUDGE
OTAZO-REYES

18 U.S.C. § 371
18 U.S.C. § 1546(a)
18 U.S.C. § 2
18 U.S.C. § 982(a)(6)

UNITED STATES OF AMERICA

vs.

JOHN H. MYERS,

        Defendant.

_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At various times relevant to this Indictment:

1. Bal Harbour Quarzo, LLC ("Bal Harbour Quarzo") was a Florida limited liability company with its principal place of business listed as 1395 Brickell Avenue, Suite 1020, Miami, FL 33131.

2. Synergy Capital Group, LLC ("Synergy Capital") was a Florida limited liability company with its principal place of business listed as 1395 Brickell Avenue, Suite 1020, Miami, FL 33131, and was a de facto holding company over Bal Harbour Quarzo.

3. Synergy Maintenance Group, LLC ("Synergy Maintenance") was a Florida limited liability company with its principal place of business listed as 1395 Brickell Avenue, Suite 1020, Miami, FL 33131.

4. OA Developments, Inc. ("OA Developments") was a Florida corporation with its principal place of business listed as 1395 Brickell Avenue, Suite 1020, Miami, FL 33131, and was a managing member of Bal Harbour Quarzo.

5. VMS Professional Services, LLC ("VMS") was a Florida limited liability company with its principal place of business listed as 1395 Brickell Avenue, Suite 1020, Miami, FL 33131.

6. Andes Global Trading LLC ("Andes Global") was a Florida limited liability company with its principal place of business listed as 1011 SunnyBrook Road, PH, Suite 1110, Miami, FL 33136.

7. Defendant **JOHN H. MYERS** was a resident of Miami-Dade County, Florida and a licensed member of the bar of the District of Colombia who practiced immigration law.

8. Non-Citizen 1 was a citizen of Argentina, a resident of Broward County, Florida, and was listed as a managing member of Synergy Maintenance.

9. Non-Citizen 2 was a citizen and resident of Argentina and was listed as a managing member of VMS.

10. Non-Citizen 3 was a citizen of Colombia, a resident of Miami-Dade County, Florida, and a managing member of Synergy Capital and OA Developments.

11. The E-2 visa program allowed a national of a country with which the United States maintained a treaty of commerce and navigation to be admitted to the United States when investing a substantial amount of capital in a bona fide United States business. A substantial amount of capital was (1) substantial in relationship to the total cost of either purchasing an established enterprise or establishing a new one; (2) sufficient to ensure the treaty investor's financial commitment to the successful operation of the enterprise; and (3) of a magnitude to support the likelihood that the treaty investor would successfully develop and direct the enterprise. A bona fide enterprise referred to a real, active and operating commercial or entrepreneurial undertaking

that produced services or goods for profit. It was required to meet applicable legal requirements for doing business within its jurisdiction.

12. The investment enterprise could not be marginal. A marginal enterprise was one that did not have the present or future capacity to generate more than enough income to provide a minimal living for the treaty investor and his or her family. Depending on the facts, a new enterprise might not be considered marginal even if it lacked the current capacity to generate such income. In such cases, however, the enterprise would be expected to have the capacity to generate such income within five years from the date that the treaty investor's E-2 classification began.

13. In order to obtain an E-2 visa, a treaty investor who was currently in the United States in a lawful nonimmigrant status could file a Petition for Nonimmigrant Work Form, Form I-129, with the United States Citizenship and Immigration Services ("USCIS"), an agency of the Department of Homeland Security ("DHS"). A request for E-2 classification could not be made on Form I-129 if the beneficiary was physically outside the United States.

14. If a treaty investor was outside the United States, the treaty investor could then apply at a United States Embassy or Consulate by completing the Department of State Online Nonimmigrant Visa Application, Form DS-160, and Nonimmigrant Treaty Trader/Treaty Investor Application, Form DS-156E. Additionally, evidence and documentation of the treaty investor's investment and involvement was required to be presented at or before the visa interview. If the application was approved by a Consular representative, the E-2 visa could be issued to the treaty investor. Terms of the visa required USCIS to approve of any "substantive change" in the terms of conditions of E-2 status, such as a merger, acquisition or major event that affected the treaty investor's previously-approved relation with the organization or business.

15. Under the immigration laws of the United States, the United States government could grant a non-citizen the right to live and work in the United States for an extended period.

One of the more common ways that happened was by the USCIS granting a non-citizen the status of "lawful permanent resident," also known as "LPR status," and commonly referred to as having a "green card."

16. One of the pathways for obtaining LPR/green card status involved a non-citizen obtaining a Permanent Employment Certification ("PEC"). In order to receive a PEC to perform skilled or unskilled labor in the United States, the non-citizen first had to obtain a formal certification from the Secretary of Labor that there were insufficient United States workers willing and qualified to perform the labor in question and that the employment of the non-citizen would not adversely affect the wages and working conditions of United States workers similarly employed. Under the application process established by the Secretary of Labor, the non-citizen could not apply directly for a certification. Rather, the non-citizen's prospective employer had to apply on the non-citizen's behalf. By this process, the prospective employer had to demonstrate, among other things, (1) that the employer had a bona fide job opportunity; (2) that the job opportunity was clearly open to United States workers; and (3) that the employer had been unable to recruit a United States worker qualified and willing to fill the job.

17. To obtain a labor certification, the non-citizen's prospective employer had to file an Application for Alien Employment Certification, officially known as a form ETA 9089, with the United States Department of Labor ("DOL"). This application had to be completed and signed under penalty of perjury by the prospective employer. In the application, the employer represented that the employer had a specific job to fill; described the nature, location, terms, and requirements of the job; and listed the name, address, and immigration status of the non-citizen seeking the job. The employer also certified that the job opportunity had been and was at the time of filing clearly open to any qualified United States worker.

18. If the DOL approved the application and issued a certification, the non-citizen's prospective employer could then file on the non-citizen's behalf an Immigrant Petition for Alien Worker, officially known as a form I-140, with the USCIS. If the USCIS approved the I-140 and the non-citizen was in the United States lawfully at that time, then the non-citizen could adjust his status to that of a lawful permanent resident by filing an Application to Register Permanent Residency or Adjustment of Status, officially known as a form I-485, with the USCIS.

19. Both the non-citizen and the prospective employer could engage an attorney to represent their respective interests during the application process for labor certification. If the non-citizen or the prospective employer engaged an attorney, however, the attorney had to sign and file a notice of appearance with the DHS on a form G-28 that specifically named the attorney's client or clients.

20. A lawful permanent resident could work and live in the United States indefinitely and, should he or she so choose, apply for United States citizenship.

21. Forms 9089, I-140, and I-485 were applications required by the immigration laws of the United States and the regulations prescribed thereunder.

## COUNT 1
## CONSPIRACY TO COMMIT VISA FRAUD
## (18 U.S.C. § 371)

1. Paragraphs 1 through 5 and 7 through 14 of the General Allegations section of this Indictment are re-alleged and fully incorporated herein by reference.

2. From in or around November 2012, through in or around July 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**JOHN H. MYERS,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with persons known and unknown to the Grand Jury to commit

5

an offense against the United States, that is, to obtain and receive, and attempt to obtain and receive, a nonimmigrant visa and other document prescribed by statute or regulation for entry into and as evidence of authorized stay and employment in the United States, knowing it to have been procured by means of any false claim or statement, and to have been otherwise procured by fraud or unlawfully obtained, in violation of Title 18, United States Code, Section 1546(a).

## PURPOSE OF THE CONSPIRACY

3. It was a purpose of the conspiracy for the defendant and his co-conspirators to encourage individuals to invest in Bal Harbour Quarzo by fraudulently obtaining for those investors E-2 nonimmigrant visas.

## MANNER AND MEANS OF CONSPIRACY

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4. Non-Citizen 3 caused Synergy Maintenance to be incorporated in the state of Florida.

5. Non-Citizen 3 opened a bank account in the name of Synergy Maintenance at Bank of America.

6. Non-Citizen 1 wired $250,000 into the Synergy Maintenance Bank of America account. Non-Citizen 3 then caused $29,925 of those funds to be disbursed to prior investors in Bal Harbour Quarzo. Further, Non-Citizen 3 caused $154,500 of those funds to be disbursed to Synergy Capital for use by Synergy Capital and Bal Harbour Quarzo.

7. **JOHN H. MYERS** prepared and filed an E-2 nonimmigrant visa application for Non-Citizen 1. That application falsely claimed that Non-Citizen 1 invested a substantial amount of capital in a bona fide United States business, specifically Synergy Maintenance. In reality,

Synergy Maintenance was a shell corporation established to facilitate Non-Citizen 1's investment in Bal Harbour Quarzo.

8. Non-Citizen 3 caused VMS to be incorporated in the state of Florida.

9. Non-Citizen 3 opened a bank account in the name of VMS at Sabadell United Bank.

10. Non-Citizen 2 deposited a total of $350,000 into the VMS Sabadell United Bank account. Non-Citizen 3 then caused $119,500 of those funds to be disbursed to prior investors in Bal Harbour Quarzo. Further, Non-Citizen 3 caused $175,000 of those funds to be disbursed to Synergy Capital for use by Synergy Capital and Bal Harbour Quarzo.

11. **JOHN H. MYERS** prepared and filed an E-2 nonimmigrant visa application for Non-Citizen 2. That application falsely claimed that Non-Citizen 2 invested a substantial amount of capital in a bona fide United States business, specifically VMS. In reality, VMS was a shell corporation established to facilitate Non-Citizen 2's investment in Bal Harbour Quarzo.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
## VISA FRAUD
## (18 U.S.C. § 1546(a))

1. Paragraphs 1, 2, 4, 5, 7, and 9 through 14 of the General Allegations section of this Indictment are re-alleged and fully incorporated herein by reference.

2. On or about June 26, 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**JOHN H. MYERS,**

did knowingly present and cause to be presented to the Consular Section of the United States Embassy in Buenos Aires, Argentina, an application required by the immigration laws and regulations prescribed thereunder, which contained a false statement with respect to a material fact, that is, Forms DS-160 and DS-156E and supporting documents which falsely stated that Non-

7

Citizen 2 had invested a substantial amount of capital in a bona fide United States business, specifically VMS, when in truth and fact, as the Defendant then and there well knew, that statement was false, in violation of Title 18, United States Code, Sections 1546(a) and 2.

## COUNT 3
## CONSPIRACY TO COMMIT IMMIGRATION FRAUD
## (18 U.S.C. § 371)

1. Paragraphs 1, 2, 4, 6, 7, 10, and 15 through 21 of the General Allegations section of this Indictment are re-alleged and fully incorporated herein by reference.

2. From in or around November 2013, through in or around January 2016, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### JOHN H. MYERS,

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with persons known and unknown to the Grand Jury to commit an offense against the United States, that is, to subscribe as true under penalty of perjury (as permitted under Title 28, United States Code, Section 1746) a false statement with respect to a material fact in an application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder and to knowingly present such application, affidavit, and other document which contained such false statement and which failed to contain any reasonable basis in law or fact, in violation of Title 18, United States Code, Section 1546(a).

### PURPOSE OF THE CONSPIRACY

3. It was a purpose of the conspiracy for the defendant and his co-conspirators to obtain LPR status for Non-Citizen 3.

### MANNER AND MEANS OF CONSPIRACY

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

8

4. **JOHN H. MYERS** and his co-conspirators prepared and submitted to the DOL a fraudulent ETA 9089 application naming Andes Global as the sponsor and Non-Citizen 3 as the beneficiary. This application contained material false statements and misrepresentations, including (a) that Andes Global intended to hire Non-Citizen 3 for a bona fide job opportunity; (b) that the same job opportunity had been clearly open to any qualified United States worker; (c) that Andes Global had legitimately tried and failed to recruit a United States worker to fill the job described in the application; and (d) that there was no familial relationship between Non-Citizen 3 and the owners, stockholders, partners, corporate officers, or incorporators of Andes Global. In fact, there was no job opening at Andes Global, the fictitious job opening was created for the sole purpose of obtaining LPR status for Non-Citizen 3, who was a relative of the Chief Financial Officer of Andes Global, and had a qualified United States citizen applied for the position, he or she would not have been hired.

5. After the DOL approved the Form 9089 labor certification, **JOHN H. MYERS** and his co-conspirators filed a fraudulent I-140 petition for Non-Citizen 3 falsely claiming that Non-Citizen 3 would be employed full-time by Andes Global.

All in violation of Title 18, United States Code, Section 371.

### COUNT 4
### IMMIGRATION FRAUD
### (18 U.S.C. § 1546(a))

1. Paragraphs 1, 2, 4, 6, 7, 10, and 15 through 21 of the General Allegations section of this Indictment are re-alleged and fully incorporated herein by reference.

2. On or about November 13, 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**JOHN H. MYERS,**

did knowingly subscribe as true under penalty of perjury (as permitted under Title 28, United

9

States Code, Section 1746) a false statement with respect to a material fact in an application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder and to knowingly present such application, affidavit, and other document which contained such false statement and which failed to contain any reasonable basis in law or fact, that is, a fraudulent I-140 petition for Non-Citizen 3 falsely claiming that Non-Citizen 3 would be employed full-time by Andes Global, in violation of Title 18, United States Code, Sections 1546(a) and 2.

## FORFEITURE
## (18 U.S.C. § 982(a)(6))

1. The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **JOHN H. MYERS**, has an interest.

2. Upon conviction of a violation of, or a conspiracy to violate, Title 18, United States Code, Section 1546, as alleged in this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(6), the following:

(a) any conveyance, including any vessel, vehicle, or aircraft used in the commission of such violation; and/or

(b) any property, real or personal –

   (1) that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of such violation; and/or

   (2) that was used to facilitate, or was intended to be used to facilitate, the commission of such violation.

3.      If any of the property described above, as a result of any act or omission of any of the defendant:

   a)   cannot be located upon the exercise of due diligence;

   b)   has been transferred or sold to, or deposited with, a third party;

   c)   has been placed beyond the jurisdiction of the court;

   d)   has been substantially diminished in value; or

   e)   has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 982(a)(6), and the procedures set forth at Title 21, United States Code, Section 853, made applicable by Title 18, United States Code, Section 982(b).

A TRUE BILL

FOREPERSON

_/s/ SLC (Edward N. Stamm)_
ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

SEAN PAUL CRONIN
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

John H. Myers,

_____Defendant._____/

CASE NO._____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division**: (Select One)
- ✓ Miami
- ___ FTL
- ___ Key West
- ___ WPB
- ___ FTP

New defendant(s)     Yes ___  No ___
Number of new defendants ___
Total number of counts ___

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:  (Yes or No)  No
   List language and/or dialect _____

4. This case will take __4__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)

   | I   | 0 to 5 days      | ✓ |
   | II  | 6 to 10 days     |   |
   | III | 11 to 20 days    |   |
   | IV  | 21 to 60 days    |   |
   | V   | 61 days and over |   |

   (Check only one)

   | Petty   |   |
   | Minor   |   |
   | Misdem. |   |
   | Felony  | ✓ |

6. Has this case previously been filed in this District Court?  (Yes or No)  No
   If yes: Judge _____  Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?  (Yes or No)  No
   If yes: Magistrate Case No.
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____

   Is this a potential death penalty case? (Yes or No)  No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?   Yes ___  No ✓

8. Does this case originate from a matter pending in the Northern Region U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?   Yes ___  No ✓

_____
SEAN PAUL CRONIN
ASSISTANT UNITED STATES ATTORNEY
Court No. A5500940

*Penalty Sheet(s) attached

REV 8/13/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: John H. Myers

**Case No**: _____

Count #: 1

Conspiracy to Commit Visa Fraud

Title 18, United States Code, Section 371

* **Max.Penalty**:         5 years' imprisonment

Count #: 2

Visa Fraud

Title 18, United States Code, Section 1546(a)

* **Max.Penalty**:         10 years' imprisonment

Count #: 3

Conspiracy to Commit Immigration Fraud

Title 18, United States Code, Section 371

* **Max.Penalty**:         5 years' imprisonment

Count #: 4

Immigration Fraud

Title 18, United States Code, Section 1546(a)

* **Max.Penalty**:         10 years' imprisonment

*Refers only to possible term of incarceration, overlap does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.